# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ELIZABETH MCLAUGHLIN**, as personal representative of the estate of John Joseph McLaughlin,

    Plaintiff,

v.

**HARTFORD LIFE & ANNUITY INSURANCE COMPANY, et al.**,

    Defendants.

Case No. 17-cv-500 (CRC)

## MEMORANDUM OPINION AND ORDER

From the nation's capital, a case brought by the estate of John Joseph McLaughlin, longtime moderator of the raucous political roundtable *The McLaughlin Group*.

*Question!* On a scale from one to ten—with one being the chance of a Washington, D.C. professional sports team winning a championship this year and ten being absolute metaphysical certainty—how certain is the Court that Mr. McLaughlin, upon his divorce from his former wife Christina Vidal, intended for her to benefit from two life insurance annuities that he brought to the marriage? Any answer shy of nine would be . . . *Wrong!* Mr. McLaughlin did *not* wish his ex-wife to receive the annuity benefits. His estate is therefore the proper beneficiary and is entitled to a declaratory judgment saying so.

### I. Background

In March 1996, before he married Ms. Vidal, Mr. McLaughlin designated her as the beneficiary of two annuity contracts that he purchased from Hartford Life & Annuity Insurance Company ("Hartford") and Allianz Life Insurance Company ("Allianz"). Pl.'s Supp. Br. Ex. A. Mr. McLaughlin and Ms. Vidal executed a prenuptial property settlement agreement in 1997 and were married in June of that year. Compl. ¶ 9. The agreement provided for a lump-sum transfer

of $1 million from Mr. McLaughlin to Ms. Vidal in the event of their divorce and indicated that the payment would settle all property rights arising out of their marriage. Id. ¶ 11. The couple divorced in 2010. In granting the divorce, the District of Columbia Superior Court found their prenuptial agreement fully enforceable and incorporated it into the judgment. Pl.'s Supp. Mem. Ex. C, at 2. Mr. McLaughlin died in Washington in August 2016. Id. ¶ 14. He was not survived by a spouse or children. Id.

Plaintiff, who is Mr. McLaughlin's niece and the representative of his estate, filed this suit seeking a declaration that the estate is the sole beneficiary of the Hartford annuity.[1] She served Ms. Vidal personally with a summons and complaint on May 10. Ms. Vidal did not answer or otherwise respond to the complaint, and on June 26 the Clerk of the Court entered default against her. ECF No. 25. Plaintiff then moved for an entry of default judgment. ECF No. 26. On August 29, the Court issued a Minute Order to Show Cause why judgment should not be entered for Plaintiff and gave Ms. Vidal until September 20 to respond. That deadline passed over a month ago, and Ms. Vidal has not responded or sought more time to do so.

In her motion for default judgment, Plaintiff relied exclusively on the common law "doctrine of implied revocation," which provides that a divorce and division of property

---

[1] Plaintiff also filed a related action, No. 15-cv-502, seeking a declaratory judgment that Mr. McLaughlin's estate is the sole beneficiary of the annuity issued by Allianz Life Insurance Company. Today, the Court issued an Order in that case granting default judgment in Plaintiff's favor with respect to the Allianz annuity. The same reasons support the Court's orders in both cases, and thus this Opinion and Order refers to both annuities.

In each case, Plaintiff also sought a declaratory judgment against the insurance companies. But, pursuant to this Court's Consent Orders, Plaintiff's claims against the companies have been dismissed. Hartford and Allianz have each agreed to disburse the annuity proceeds only upon a final judgment of this Court or upon a settlement between Plaintiff and Ms. Vidal.

generally revokes a former spouse's status as beneficiary of a will.  Estate of Liles, 435 A.2d 379 (D.C. 1981).  Plaintiff did not, however, cite authority supporting the application of that doctrine to annuities, life insurance policies, or other contract-based instruments, as opposed to wills. Noting that the District of Columbia Court of Appeals has expressly declined to extend the doctrine to contract-based instruments,[2] the Court by Order dated October 6, 2017 directed the parties to file supplemental briefing on two related issues: (1) Whether the doctrine of implied revocation operates to revoke a former spouse's status as beneficiary of an annuity, and (2) assuming that the doctrine does *not* apply to annuities, whether Plaintiff is entitled to the requested declaratory judgment for another reason.  Plaintiff filed a supplemental brief and attached the prenuptial agreement and the judgment of divorce as exhibits.

## II. Legal Standard

Default judgment is warranted "when the adversary process has been halted because of an essentially unresponsive party."  H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970).  Where a plaintiff has moved for default judgment, the Court must ensure that default was properly entered and, if so, decide whether the facts stated in the complaint, accepted as true, entitle the plaintiff to judgment in her favor.  See Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011).

## III. Analysis

The Clerk properly entered default against Ms. Vidal, as she has yet to respond to the complaint, to Plaintiff's motion for default judgment, or to the Court's show cause order.  See

---

[2] See Bolle v. Hume, 619 A.2d 1192, 1198 (D.C. 1993); Estate of Bowden v. Aldridge, 595 A.2d 396, 398 n.6 (D.C. 1991) (declining to reach the question of whether the doctrine applies to revoke former spouse's beneficiary status for life insurance benefits and an Individual Retirement Account).

3

Fed. R. Civ. P. 55. And, having resolved the following issues, the Court finds that the facts stated in the complaint entitle Plaintiff to declaratory relief.

*Issue number one: Subject matter jurisdiction! Do the facts alleged establish it? Yes!* For purposes of diversity jurisdiction, the representative of an estate is "deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). At the time of his death, Mr. McLaughlin was a citizen of Washington, D.C. Compl. ¶ 2. Ms. Vidal is a citizen of Connecticut. Id. ¶ 5. The annuity contracts at issue each have a value greater than $75,000. Id. ¶ 9. Thus, because the declaratory relief sought in the complaint would result in the disbursement of over $75,000, and because Plaintiff and Ms. Vidal are citizens of different states, this Court has diversity jurisdiction over the case. 28 U.S.C. § 1332; see also, e.g., Thomas v. Metro. Life Ins. Co., 921 F. Supp. 810, 811 (D.D.C. 1996) (resolving issue of beneficiary designation through declaratory judgment).

*Next issue! Does this Court have personal jurisdiction over Ms. Vidal, a citizen of Connecticut? Certainly!* District of Columbia law allows for specific personal jurisdiction over non-resident defendants "as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia," D.C. Code § 13-423, and this standard is "coextensive with the Constitution's due process limit," First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1377 (D.C. Cir. 1988). Thus, the Court may exercise specific jurisdiction if there is a sufficient relationship between the gravamen of the complaint—that Ms. Vidal is not the beneficiary of the annuities—and the District of Columbia, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). That is the case here. As explained below, the primary issue here is whether Mr. McLaughlin and Ms. Vidal's

4

divorce—which resulted in the enforcement of a prenuptial agreement and a settlement of $1 million—revoked Ms. Vidal's status as beneficiary of the annuities. While Hartford is a Connecticut business and Allianz is from Minnesota, all other aspects of the transactions associated with the annuities occurred in the District of Columbia. Specifically: Mr. McLaughlin purchased the annuities and designated Ms. Vidal as their beneficiary. Compl. ¶ 9. Mr. McLaughlin and Ms. Vidal were married in Washington in 1997. Id. ¶ 6. While married, the couple lived together here. Id. In 2010, Ms. Vidal obtained a divorce in District of Columbia Superior Court, which issued its final judgment of divorce in 2010. Id. ¶ 10. That judgment resulted in a settlement of $1 million paid to Ms. Vidal. And Mr. McLaughlin died in Washington in August 2016. Id. ¶ 14. These myriad connections tie Ms. Vidal, through the annuity contracts, to the District of Columbia, and thus the Court may exercise personal jurisdiction over her.

***Issue number three: The merits! Do the facts alleged show that Mr. McLaughlin's estate, rather than Ms. Vidal, is the beneficiary of the annuities? Clearly (but not necessarily for the reason first offered by Plaintiff).*** Mr. McLaughlin designated Ms. Vidal as the annuities' beneficiary in 1996 and never removed her after their divorce in 2010. Nevertheless, Plaintiff contends that Ms. Vidal's status as beneficiary was extinguished by the divorce and settlement payment. In her motion for default judgment, Plaintiff relied exclusively on the "doctrine of implied revocation," which provides that a divorce and division of property generally revokes a former spouse's status as beneficiary of a will. See Liles, 435 A.2d at 382 (D.C. 1981). The Court found that her motion skirted the issue—noting that District of Columbia courts have never applied this doctrine to instruments besides wills—and ordered supplemental briefing. Plaintiff in her supplemental brief raises the alternative argument that,

5

notwithstanding any implied revocation, the prenuptial agreement between Mr. McLaughlin and Ms. Vidal establishes that the parties intended to terminate Ms. Vidal's beneficiary status in the event of divorce. The Court agrees, and therefore it need not decide whether the doctrine of implied revocation automatically terminates spousal beneficiary designations in annuity contracts after a divorce.

In deciding whether a former spouse remains a beneficiary of an insurance policy after a divorce, District of Columbia courts have required "convincing evidence" that the spouses' "separation and property agreement . . . was intended to deprive the named beneficiary of [the] interest." Aldridge, 595 A.2d at 396. "General expressions or clauses" in prenuptial agreements that waive interests in property are insufficient to show such intent. Mayberry v. Kathan, 232 F.2d 54, 55 (D.C. Cir. 1956) (finding insufficient: "Each of the parties hereto renounces and releases all right, title and interest which he or she now has or ever could have in the property . . . of the other whether now owned or hereafter at any time acquired."); Aldridge, 595 A.2d at 398 (relying on Mayberry in finding parties' "general statements" of waiver insufficient).

The Court finds that the parties' prenuptial agreement provides clear and convincing evidence that Mr. McLaughlin and Ms. Vidal intended their divorce to terminate Ms. Vidal's interest in the annuities. When Mr. McLaughlin and Ms. Vidal divorced, the District of Columbia Superior Court enforced this agreement and incorporated it into the divorce judgment, finding that it "serve[d] to resolve all issues between them incident to their marriage." Id. ¶ 11; see Pl.'s Supp. Mem. Ex. C (Divorce Judgment), at 2. Pursuant to the prenuptial agreement, Mr. McLaughlin paid Ms. Vidal a $1 million settlement of all property rights arising from their marriage. Compl. ¶ 11. As relevant here, Paragraph 8 of the agreement, titled "Pensions," provided that:

(a) [E]ach of the parties hereby expressly *waives any right* in fact or law either may have under any federal or state law as a spouse to participate as a payee or beneficiary under the interests the other may have in any such plans *including*, but not limited to*, the right either spouse may have to receive any benefit, in the form of a lump sum death benefit, joint or survivor annuity, or preretirement survivor annuity*, pursuant to any state or federal law . . . .

(b) Notwithstanding the foregoing, in the event that either party shall hereafter expressly designate the other as a participant or beneficiary in any of the plans, that designation shall control. Specifically, the parties intend that existing beneficiary designation under the Legg Mason IRA shall survive this agreement.

Pl.'s Supp. Mem. Ex. B ("Prenuptial Agreement"), at ¶ 8 (emphasis added).

The waiver language in Paragraph 8(a), taken alone, might not sufficiently establish an intent to terminate Ms. Vidal's beneficiary status in the event of divorce. To be sure, unlike with the generalized waivers that District of Columbia courts have held insufficient, the parties here specifically referenced death benefits and annuities like the annuity contracts at issue here. Cf. Mayberry, 232 F.2d at 55 (in finding that party had not waived interest in death benefit, noting absence of "specific reference to the death benefits" in settlement agreement). But their waiver language focused on rights arising "as a spouse," which calls to mind rights created by default rules governing payee and beneficiary status, as opposed to express designations made by contract.

Taken as a whole, however, Paragraph 8 clearly shows that the parties meant for their divorce to extinguish Ms. Vidal's status as beneficiary of the annuities. By specifying that beneficiary designations made *after* execution of the prenuptial agreement should be honored notwithstanding the waiver, the parties manifested their intent to vitiate beneficiary designations made *before* the agreement, like those of the annuities here. That Ms. Vidal was designated as beneficiary before the parties executed their prenuptial agreement is also independent proof that the parties had the annuities in mind when executing the agreement. Cf. Thomson v. Thomson,

7

156 F.2d 581, 586 (8th Cir. 1946) ("[N]o mention was made of the insurance until after the [settlement] contract was signed, nor was any mention made of it in the [divorce] decree."). And the fact that the parties specifically identified the Legg Mason IRA as exempt from their waiver suggests they contemplated that other similar assets, including the annuities, would be subject to the waiver.

The Court therefore finds that Mr. McLaughlin and Ms. Vidal's prenuptial agreement provides clear, convincing evidence of the parties' intent to terminate Ms. Vidal's status as beneficiary of the annuities in the event of their divorce. A District of Columbia court enforced that agreement in full when the parties divorced. And because Mr. McLaughlin did not designate a contingent beneficiary for the annuities, Mot. Default J. ¶ 22, Mr. McLaughlin's estate stands as their sole beneficiary.

Therefore, until the next episode . . .

It is **ORDERED** that:

1. Plaintiff's Motion for Default Judgment is GRANTED;

2. The Estate of John Joseph McLaughlin is hereby DECLARED the beneficiary of Annuity Contract No. 310104648 (the "Annuity") issued by Hartford Life & Annuity Insurance Company;

3. Hartford Life & Annuity Insurance Company shall immediately disburse the Annuity's death benefit to the Plaintiff Elizabeth McLaughlin in her capacity as Personal Representative of the Estate of John Joseph McLaughlin; and

4. Count Two of the Complaint is DISMISSED as moot.

   **SO ORDERED.**

   _____
   CHRISTOPHER R. COOPER
   United States District Judge

Date: October 25, 2017